UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------- x

NOAH SCHEINMANN,                     :

        Plaintiff,            :        16 Civ. 5446 (AJP)

    -against-                        :        **OPINION & ORDER**

LEONARD DYKSTRA,                     :

        Defendant.            :

------------------------------------- x

**ANDREW J. PECK, United States Magistrate Judge:**

        Having been advised that the parties reached a settlement agreement in principle, the Court dismissed this action with prejudice on March 30, 2017, but allowed reinstatement within thirty days if the settlement was not fully effectuated. (Dkt. No. 45.) On April 3, 2017, when defendant Leonard Dykstra refused to sign the consent judgment, plaintiff Noah Scheinmann moved to reopen the case to enforce the settlement. (Dkt. No. 46.) The Court reopened the case to consider Scheinmann's motion. (Dkt. No. 48.) The parties have consented to decision of the case by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (Dkt. No. 36.) For the reasons set forth below, Scheinmann's motion to enforce the settlement is <u>GRANTED</u>, but his request for attorneys' fees is <u>DENIED</u>. Put another way, Dykstra's position has struck out.

## **FACTS**

        On March 13, 2017, Scheinmann's counsel, Jon Bierman, sent Dykstra's counsel, Jeremy Smith, the following email:

> Jeremy,
>
> Thank you for sending over the documents. I propose settling this matter on the following terms:

> • Mr. Dysktra agrees to an up-front payment of some amount. I realize that he has significant financial difficulties and I am not talking about a large number. You tell me what he can come up with.
>
> • Mr. Dysktra consents to a judgment being taken in favor of Mr. Scheinmann in the amount of $15,000 less the amount of the up-front payment, and
>
> • Mr. Dykstra dismisses his counterclaim with prejudice.
>
> This offer remains open until 5 pm (central time) on Wednesday, March 15th.

(Dkt. No. 46-1: Bierman Aff. Ex. 1: 3/13/17 Email.)

> On March 14, 2017, Smith responded:
>
> Jon,
>
> My client can agree to the second and third terms, but he does not have any money to pay towards the $15,000. He was counting on the Harper Collins money (as was I) and his other lawsuit was dismissed on summary judgment.
>
> Please let me know if we have a deal.

(Id., 3/14/17 Email.)

On March 15, 2017, Bierman responded: "We have a deal. I will put together a consent judgment within the next week." (Id., 3/15/17 Email.) Some two and a half hours later, Smith emailed: "Okay, are you going to draft the settlement/mutual release?" (Bierman Aff. Ex. 2: 3/15/17 Email.) Bierman responded that there was no need for "another settlement agreement," i.e., the mutual release, because "the entirety of the [settlement] agreement" was defined in their prior emails (a $15,000 judgment and dismissal of Dykstra's counterclaim). (Id., 3/17/17 Email.) "The judgment," Bierman wrote, "concludes the litigation" and "no additional release [is] necessary." (Id., 3/17/17 Email.) Smith argued that a mutual release was "a standard item" (id., 3/17/17 Email), without which he needed "something in the judgment to confirm that all disputes between the parties are resolved so that there is finality" (Bierman Aff. Ex. 3: 3/24/17 Email). Bierman considered the

matter resolved and refused to "reopen settlement negotiations." (Bierman Aff. Ex. 4: 3/29/17 Email.) Dykstra refused to sign the proposed consent judgment. (Bierman Aff. ¶ 7.)

**ANALYSIS**

**I.  THE PURPORTED SETTLEMENT AGREEMENT MUST BE INTERPRETED UNDER PRINCIPLES OF CONTRACT LAW**

It is black letter law in the Second Circuit that "[s]ettlement agreements are contracts and must therefore be construed according to general principles of contract law." Red Ball Interior Demolition Corp. v. Palmadessa, 173 F.3d 481, 484 (2d Cir. 1999); accord, e.g., Lenington v. Kachkar, 633 F. App'x 59, 60 (2d Cir. 2016); Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., No. 04-3528, 2005 WL 1076552 at *1 (2d Cir. May 6, 2005); Loreley Fin. No. 3 Ltd. v. Wells Fargo Sec., LLC, 12 Civ. 3723, 2017 WL 985875 at *6 (S.D.N.Y. Mar. 10, 2017); Dash v. Bd. of Educ. of City Sch. Dist. of N.Y., No. 15-CV-2013, --- F. Supp. 3d ----, 2017 WL 838226 at *5 (E.D.N.Y. Mar. 3, 2017) (Weinstein, D.J.); Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 04 Civ. 1621, 2005 WL 1377853 at *4 (S.D.N.Y. June 9, 2005) (Peck, M.J.) (citing cases).

In this case, the parties disagree as to whether a binding contract was formed by the emails between counsel for Scheinmann and Dykstra. The Court therefore must determine, under New York law,[1] whether a contract was formed, and if so, whether that contract is enforceable.

---

[1]  This Court has subject matter jurisdiction based on diversity of citizenship between the parties. (Dkt. No. 1: Compl. ¶ 3.) "'It is black letter law that in a diversity action such as this, state substantive law applies.'" Chevron TCI, Inc. v. Tallyrand Assoc., LLC, 03 Civ. 4043, 2003 WL 22977498 at *4 (S.D.N.Y. Dec. 19, 2003) (Peck, M.J.) (citing Erie R.R. v. Tompkins, 309 U.S. 64, 78, 58 S. Ct. 817, 822 (1938)). In any event, "there is no material difference between the applicable state law or federal common law standard." Kaczmarcysk v. Dutton, 414 F. App'x 354, 355 (2d Cir. 2011). The Court also notes that it retained jurisdiction over this case pending final settlement (Dkt. No. 45), which the parties do not dispute. See, e.g., Hendrickson v. United States, 791 F.3d 354, 359-60 (2d Cir. 2015).

"'To form a valid contract under New York law, there must be an offer, acceptance, consideration, mutual assent and intent to be bound.'" Register.Com, Inc. v. Verio, Inc., 356 F.3d 393, 427 (2d Cir. 2004); see also, e.g., Doe v. Kogut, 15 Civ. 7726, 2017 WL 1287144 at *4 (S.D.N.Y. Apr. 6, 2017) ("The lynchpin of any settlement agreement is the mutual assent of parties to the terms of the settlement."); Rightnour v. Tiffany & Co., 16 Civ. 3527, --- F. Supp. 3d ----, 2017 WL 878448 at *5 (S.D.N.Y. Mar. 6, 2017); In re SinoHub, Inc. Sec. Litig., 12 Civ. 8478, 2015 WL 3792625 at *1 (S.D.N.Y. June 3, 2015); Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853 at *4 (& cases cited therein). "'An exchange of emails may constitute an enforceable agreement if the writings include all of the agreement's essential terms, including the fee, or other cost, involved.'" Sullivan v. Ruvoldt, 16 Civ. 583, 2017 WL 1157150 at *6 (S.D.N.Y. Mar. 27, 2017).

"[O]nce reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart between the time of the agreement to the terms of the settlement and the time it is reduced to writing." Macdonald v. Dragone Classic Motor Cars, 95 Civ. 499, 2003 WL 22056626 at *6 (D. Conn. Apr. 29, 2003); accord, e.g., Sher v. Bonocci, No. 13-CV-6168, 2017 WL 64766 at *3 (W.D.N.Y. Jan. 6, 2017); McLeod v. Post Graduate Ctr. for Mental Health, 14 Civ. 10041, 2016 WL 6126014 at *3 (S.D.N.Y. Sept. 30, 2016), R. & R. adopted, 2016 WL 6126383 (S.D.N.Y. Oct. 19, 2016).

Moreover, "'[a] district court has the power to enforce summarily, on motion, a settlement agreement reached in a case that was pending before it.'" BCM Dev., LLC v. Oprandy, 490 F. App'x 409, 409 (2d Cir. 2013); accord, e.g., Goldstein v. Solucorp Indus., Ltd., 11 Civ. 6227,

2017 WL 1078739 at *4 (S.D.N.Y. Feb. 10, 2017), R. & R. adopted, 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017); Grgurev v. Licul, 15 Civ. 9805, 2016 WL 6652741 at *3 (S.D.N.Y. Nov. 10, 2016).

## II. THE EMAILED OFFER AND ACCEPTANCE BETWEEN COUNSEL FOR SCHEINMANN AND DYKSTRA FORMED A BINDING SETTLEMENT CONTRACT

### A. The Parties Entered Into A Binding Agreement

After Scheinmann's counsel Bierman proposed settlement terms–a $15,000 consent judgment against Dykstra with some up front payment and dismissal of Dykstra's counterclaim–Dykstra's counsel Smith responded that the judgment and dismissal of the counterclaim were acceptable, but Dykstra had no money to put towards the settlement. (See page 2 above.) He ended the email, stating: "Please let me know if we have a deal," to which Bierman responded, "We have a deal." (See id.)

The parties' emails show that they reached a mutual agreement to settle the case following an offer, acceptance, consideration, mutual assent and intent to be bound. "'An exchange of emails may constitute an enforceable agreement if the writings include all of the agreement's essential terms, including the fee, or other cost, involved.'" Sullivan v. Ruvoldt, 16 Civ. 583, 2017 WL 1157150 at *6 (S.D.N.Y. Mar. 27, 2017). The emails contained the agreement's material terms–indeed, its only terms. The judgment amount was specified with particularity as was the counterclaim dismissal, and no other term was ambiguous or left open for further negotiation. See, e.g., Wilson v. Ledger, 97 A.D.3d 1028, 1029, 949 N.Y.S.2d 515, 517 (3d Dep't 2012) ("It is well settled that a contract must be definite in its material terms in order to be enforceable. . . . [T]he promise made must be sufficiently certain so that the parties' intentions are ascertainable. Thus, an agreement to agree, in which material terms are left for future negotiation, is unenforceable." (quotations & citations omitted)). The mutual assent and intent to be bound by the emails is clear

from the emails, i.e., "Please let me know if we have a deal," "We have a deal." (See page 2 above); see, e.g., Stonehill Capital Mgmt., LLC v. Bank of the W., 28 N.Y.3d 439, 448, 45 N.Y.S.3d 864, 870 (2016) ("To form a binding contract there must be a 'meeting of the minds' such that there is 'a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms.'" (citations omitted)).

      Only after the parties had agreed did Dykstra's counsel seek a mutual general release, which cannot be considered a "material" term because, as Bierman noted, "[t]he judgment concludes the litigation" whether or not a release is signed. (See page 2 above.) Moreover, a judgment would effectuate all the agreed-upon terms, resulting in the settlement and dismissal of this action with prejudice, the judgment against Dykstra, and dismissal of Dykstra's counterclaim. That a mutual release is, as Smith argued, a "standard item" in many–but not all–settlements does not make it material[2] or render the agreement ambiguous where the intent to include such a term was not expressed. See, e.g., HOP Energy, L.L.C. v. Local 553 Pension Fund, 678 F.3d 158, 162 (2d Cir. 2012) ("With unambiguous contracts, a party's subjective intent and understanding of the terms is

---

[2] Put another way, the release is not "essential to a determination of [the parties'] rights and duties" because the agreement is clear, it settled this lawsuit and can be enforced as-is. Bank of Am. Nat'l Ass'n v. AIG Fin. Prods. Corp., 509 F. App'x 24, 27 (2d Cir. 2013); see also, e.g., Am. Home Assur. Co. v. Cent. Transp. Int'l, Inc., 354 F. App'x 499, 501 (2d Cir. 2009) ("Defendant also argues that the settlement agreement was not binding because all of the terms were not agreed to. Specifically, it identifies a number of terms that it ordinarily requires as part of settlement agreements, including a release of related claims . . . . It is undisputed, however, that [the parties] never discussed these terms, much less intended their agreement to be nonbinding in their absence. Although defendant characterizes these terms as being 'essential' to the contract, in reality they are simply additional terms that, in hindsight, it wishes it had bargained for."); Estate of Brannon v. City of N.Y., 14 Civ. 2849, 2016 WL 1047078 at *3 (S.D.N.Y. Mar. 10, 2016) (noting plaintiff had not "pointed to any legal authority indicating that the hypothetical possibility of future claims make the extent of a release a material term . . . .").

irrelevant.").[3/] Indeed, Dykstra cites no case, nor offers an affidavit from counsel, to support the argument that a general release is "standard." Certainly, this Court's experience (as a lawyer and a judge) is that some settlements include a general release in "Blumberg" form (releasing all claims from the "beginning of the world"), others have a different general release format, while other settlements have a specific release, are dismissed without any release, or include whatever else the parties may have negotiated. See, e.g., Regolodo v. Neighborhood P'ship Hous. Dev. Fund Co., 25 Misc. 3d 1229, 1229, 906 N.Y.S.2d 775, 775 (Sup. Ct. Kings Cty. 2009) ("The language used in a release document may vary. Such language is not a material element of the settlement. It is a by-product of the agreement and not an element of same."). It does not matter that the judgment itself had to be reduced to writing because doing so was a post-agreement formality, and neither party expressed a desire not to be bound in the absence of an executed writing. See, e.g., Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853 at *5 ("The problem with Republic's argument is its failure to distinguish between a preliminary agreement contingent on and not intended to be binding absent formal documentation, and a binding agreement that is nevertheless to be further documented. The emails demonstrate the latter type agreement, which

---

[3/] Accord, e.g., Comolli v. Huntington Learning Ctrs., Inc., 180 F. Supp. 3d 284, 289 n.27 (S.D.N.Y. 2016) ("'[I]t was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties.'"), aff'd, 2017 WL 1041817 (2d Cir. Mar. 16, 2017); Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 04 Civ. 1621, 2005 WL 1377853 at *5 (S.D.N.Y. June 9, 2005) (Peck, M.J.) ("[I]t is not [the] parties' subjective intent that controls, but rather what the parties said (and/or did)." (citing cases)); Zheng v. City of N.Y., 93 A.D.3d 510, 511, 940 N.Y.S.2d 582, 584 (1st Dep't), aff'd, 19 N.Y.3d 556, 950 N.Y.S.2d 301 (2012).

is binding.").[4]  Finally, Smith's unilateral mistake cannot reform the otherwise complete and unambiguous contract,[5] and the Court cannot add terms not agreed to by the parties.[6]

### B. The Winston Test Supports Enforcement Of The Agreement

Enforcement of the agreement is supported by the four factors set forth in Winston v. Mediafare Entm't Corp., 777 F.2d 78, 80 (2d Cir. 1985), "that help determine whether the parties intended to be bound in the absence of a document executed by both sides":

---

[4] See also, e.g., Brighton Inv., Ltd. v. Har-Zvi, 88 A.D.3d 1220, 1222, 932 N.Y.S.2d 214, 216 (3d Dep't 2011) ("An unsigned contract may be enforceable when objective evidence establishes that the parties intended to be bound, and an exchange of e-mails may constitute an enforceable contract, even if a party subsequently fails to sign implementing documents, when the communications are 'sufficiently clear and concrete' to establish such an intent." (citations omitted)); Healy v. Gumienny, 142 A.D.2d 629, 629, 531 N.Y.S.2d 7, 8 (2d Dep't 1988) ("'[W]hen all the essential terms and conditions of an agreement have been set forth in informal written memoranda and all that remains is their translation into a more formal document, such an agreement will be capable of specific performance.'").

[5] See, e.g., De Sole v. Knoedler Gallery, LLC, 139 F. Supp. 3d 618, 662-63 (S.D.N.Y. 2015) ("New York law requires that the party seeking rescission on [the basis of a unilateral mistake] establish that (i) he entered into a contract based upon a mistake as to a material fact, and (ii) the other contracting party either knew or should have known that such a mistake was being made." (quotations omitted)); Imrie v. Ratto, 145 A.D.3d 1358, 1360, 45 N.Y.S.3d 230, 232 (3d Dep't 2016) ("[A] party seeking reformation of a contract must establish, by clear and convincing evidence, either that the writing at issue was executed under mutual mistake or that there was a fraudulently induced unilateral mistake."); 313-315 W. 125th St. L.L.C. v. Arch Specialty Ins. Co., 138 A.D.3d 601, 602, 30 N.Y.S.3d 74, 76 (1st Dep't 2016) (same).

[6] See, e.g., Zaidi v. N.Y. Bldg. Contractors, Ltd., 99 A.D.3d 705, 706-07, 951 N.Y.S.2d 573, 575 (2d Dep't 2012) ("[C]ourts may not add terms to a contract and thereby make a new contract for the parties under the guise of interpreting the writing. Therefore, a court 'will not imply a term where the circumstances surrounding the formation of the contract indicate that the parties, when the contract was made, must have foreseen the contingency at issue and the agreement can be enforced according to its terms.'" (citations omitted)); accord, e.g., Mergers & Acquisition Servs., Inc. v. Eli Glob., LLC, 15 Civ. 3723, 2017 WL 1157132 at *6 (S.D.N.Y. Mar. 27, 2017); Keller-Goldman v. Goldman, --- N.Y.S.3d ----, 2017 WL 1272107 at *2 (1st Dep't Apr. 6, 2017).

> (1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing.

Id.; see also, e.g., Elizabeth St. Inc. v. 217 Elizabeth St. Corp., 276 A.D.2d 295, 296, 714 N.Y.S.2d 436, 436 (1st Dep't 2000) (applying Winston factors).

The first factor "is the most important." Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 04 Civ. 1621, 2005 WL 1377853 at *7 (S.D.N.Y. June 9, 2005) (Peck, M.J.); accord, e.g., Goldstein v. Solucorp Indus., Ltd., 11 Civ. 6227, 2017 WL 1078739 at *6 (S.D.N.Y. Feb. 10, 2017) ("This is the most heavily weighed Winston factor. . . . [C]ourts have frequently found the absence of such a reservation to weigh in favor of enforcing a settlement."), R. & R. adopted, 2017 WL 1067792 (S.D.N.Y. Mar. 21, 2017). There was no express or implied reservation by either party of the right not to be bound absent a signed writing. (See page 2 above.) Bierman made an offer, Smith responded with a counteroffer, and Bierman accepted that counteroffer. (See id.) "The . . . emails constitute a classic offer and acceptance, contain all the terms of the agreement, and evidence the intent that the" parties "ha[d] a deal." Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853 at *7; see page 2 above. This factor favors Scheinmann.

As to the second factor, there was no partial performance since Dykstra repudiated the agreement before the judgment was signed. See, e.g., Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853 at *8. This factor is neutral.

The third factor, whether all material terms had been agreed to, favors Scheinmann. The parties agreed to settle the case with a judgment against Dykstra for a specific judgment amount and dismissal of his counterclaim. As discussed above (see pages 6-7), the general release was not material to the agreement, and Dykstra does not argue that any other term (material or otherwise)

went unaddressed. See, e.g., Doe v. Kogut, 15 Civ. 7726, 2017 WL 1287144 at *7 (S.D.N.Y. Apr. 6, 2017) ("The third Winston factor examines whether the parties agreed on all material terms."); Grgurev v. Licul, 15 Civ. 9805, 2016 WL 6652741 at *6 (S.D.N.Y. Nov. 10, 2016) ("[C]ourts analyzing this factor focus on whether the parties reached agreement with respect to all material terms."); Estate of Brannon v. City of N.Y., 14 Civ. 2849, 2016 WL 1047078 at *3 (S.D.N.Y. Mar. 10, 2016) ("The Second Circuit has clarified that the third Winston factor should evaluate whether the parties have agreed 'on all material terms.'" (quoting Ciaramella v. Reader's Digest Ass'n, Inc., 131 F.3d 320, 325 (2d Cir. 1997))).

The fourth factor, whether the agreement at issue is the type of contract that is usually committed to writing, also favors Scheinmann. The inquiry "is whether the settlement agreement terms are sufficiently complex or involve long time periods, such that there should be a formal writing." Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853 at *9 (citing cases); accord, e.g., Grgurev v. Licul, 2016 WL 6652741 at *7; Estate of Brannon v. City of N.Y., 2016 WL 1047078 at *3. "Courts evaluate complexity by considering '(1) the amount of money at issue, (2) whether the terms of agreement will carry into perpetuity, and (3) the length and complexity of the agreement itself.'" Grgurev v. Licul, 2016 WL 6652741 at *7.

The agreement is not complex. The parties agreed on a relatively small amount of money ($15,000) to be entered as a judgment against Dykstra. (See page 2 above.) Thus, there were no complex payment arrangements or any required post-judgment obligations on either side. (See id.) The parties' obligation to satisfy the agreed-upon terms (settlement and dismissal of Dykstra's counterclaim) terminates on entry of the boilerplate judgment. No formal writing was required to memorialize these terms. Indeed, Dykstra never insisted, then or now, on a more extensive written

agreement; rather, he only seeks to include an additional release term.[7] In this case, moreover, there was a writing – Smith's counter-offer email that Bierman accepted by email. See, e.g., Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC, 2005 WL 1377853 at *9-10. Those emails memorialized the agreement's only terms, and settled this lawsuit. (See page 2 above.)[8]

---

[7] Dykstra argues that New York's res judicata rules somehow demand that the parties sign a general release. (Dkt. No. 49: Dykstra Br. at 5-6.) While the Court rejects that argument, Dykstra is correct that enforcement of the settlement also means that this lawsuit, and all of Scheinmann's claims, are subsumed within the judgment, i.e., effectively dismissed with prejudice. Thus, at least in some respects, it would appear that Dykstra does not need the contractual protection he seeks because he likely will have it by operation of law anyway, as he notes in his brief. See, e.g., Buczek v. Tirone, No. 16-1670, 2016 WL 7436497 at *1 (2d Cir. Dec. 22, 2016) ("New York law has adopted a 'transactional approach' to [res judicata]. '[O]nce a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transaction are barred . . . .'" (alterations in original)); Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286-87 (2d Cir. 2002) ("Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action. It is clear that a dismissal, with prejudice, arising out of a settlement agreement operates as a final judgment for res judicata purposes." (citation omitted)).

[8] Dykstra argues that CPLR § 2104 bars enforcement of the settlement. (Dykstra Br. at 4-5.) CPLR § 2104 states: "An agreement between parties or their attorneys relating to any matter in an action, other than one made between counsel in open court, is not binding upon a party unless it is in a writing subscribed by him or his attorney or reduced to the form of an order and entered." It is not clear whether this provision applies to federal diversity actions. See, e.g., Alli v. Warden of A.R.N.D.C., 12 Civ. 3947, 2016 WL 7176979 at *2 (S.D.N.Y. Dec. 9, 2016) ("[S]ome case law has applied federal principles regarding the enforcement of settlement agreements without regard—indeed, without even mentioning—N.Y. C.P.L.R. § 2104."), R. & R. adopted, 2017 WL 118023 (S.D.N.Y. Jan. 11, 2017). Even if it were to apply, the Second Circuit has suggested that compliance with the statute might be excused in certain circumstances. Figueroa v. N.Y.C. Dep't of Sanitation, 475 F. App'x 365, 366 (2d Cir. 2012) ("Even if we assume that New York State law controls the issue of whether the settlement agreement in this case was enforceable, the New York Court of Appeals has left open the possibility that in certain limited circumstances, a court may enforce a settlement agreement that does not comply with the requirements of Rule 2104."). Regardless, the Court need not decide whether CPLR § 2104 applies here because there was a writing, the emails with counsel's signature blocks, that set forth the agreement. See, e.g., Forcelli v. Gelco Corp., 109 A.D.3d 244, 250, 972 N.Y.S.2d 570, 575 (2d Dep't 2013) ("[G]iven the now widespread use of email as a form of written communication in both personal and
(continued...)

Based on all of the Winston factors, the Court finds that the parties intended for the emails to constitute a binding settlement agreement that therefore will be enforced by the Court.

## III. THE COURT DECLINES TO AWARD SCHEINMANN ATTORNEYS' FEES

Scheinmann argues that Dykstra's refusal to finalize the settlement warrants an award of attorneys' fees against Dykstra and his counsel as a sanction under 28 U.S.C. § 1927. (Dkt. No. 46: Scheinmann Br. at 5 ¶ 17.) Under 28 U.S.C. § 1927, a court may require any attorney "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." Such an award can only be applied to counsel, and moreover is proper "only 'when there is a finding of conduct constituting or akin to bad faith.'" Zurich Am. Ins. Co. v. Team Tankers A.S., 811 F.3d 584, 591 (2d Cir. 2016). No such finding is supported by the record. The Court accordingly declines in its discretion to award Scheinmann attorneys' fees. See, e.g., Sorenson v. Wolfson, 170 F. Supp. 3d 622, 634 (S.D.N.Y. 2016) ("The Court has discretion to decide whether to impose sanctions under 28 U.S.C. § 1927 and its inherent authority."), aff'd, 2017 WL 1043073 (2d Cir. Mar. 16, 2017).

---

8/ (...continued)
business affairs, it would be unreasonable to conclude that email messages are incapable of conforming to the criteria of CPLR 2104 simply because they cannot be physically signed in a traditional fashion."); Williamson v. Delsener, 59 A.D.3d 291, 291, 874 N.Y.S.2d 41, 41 (1st Dep't 2009) ("The e-mails exchanged between counsel, which contained their printed names at the end, constitute signed writings" under CPLR § 2104.).

**CONCLUSION**

For the reasons discussed above, Scheinmann's motion to enforce the settlement (Dkt. No. 46) is GRANTED, but his request for attorneys' fees is DENIED. Judgment is entered simultaneous to this Opinion.

SO ORDERED.

Dated:    New York, New York
          April 21, 2017

                                          _____
                                          **Andrew J. Peck**
                                          United States Magistrate Judge

Copies ECF to:    All Counsel